# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| JOHNY SCRUGGS and MALINDA SCRUGGS, | ) ) ) | |
|     Plaintiffs, | ) | |
| v. | ) | Case No. CV411-203 |
| | ) | |
| INTERNATIONAL PAPER COMPANY, UNIMIN CORPORATION, ABC CORPORATION, EFG CORPORATION, XYZ CORPORATION, and JOHN DOES 1-5, | ) ) ) ) ) ) | |
|     Defendants. | ) | |

## O R D E R

Johny Scruggs is a truck driver who burned his feet while walking through some liquid when he delivered a load at defendant International Paper Co.'s (IP's) Savannah, Georgia mill. He brought this premises-liability case against IP. Doc. 1-2. His wife brings a consortium claim. *Id.* at 4. In this Order, as joined by a companion Order issued this day, the Court is reaching the rest of a series of discovery disputes arising between the parties. *See Scruggs v. International Paper Co.*, 278 F.R.D. 698 (S.D. Ga. 2012) (resolving video inspection issue); doc. 41; doc. 38; doc. 26.

## A. Spoliation

IP seeks sanctions for plaintiffs' alleged spoliation of evidence. Doc. 54. Such sanctions are applied where a party destroys or fails to preserve evidence ahead of reasonably foreseeable litigation, if not in the face of actual litigation. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 943-46 (11th Cir. 2005). They "prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Id.* at 944. Sanctions range from an "adverse inference instruction" to the jury to, if a plaintiff is at fault, outright dismissal of his case. *Id.* at 947; *Evans v. Mobile County Health Department*, 2012 WL 206141 at * 10-13 (S.D. Ala. Jan. 24, 2012) (imposing spoliation sanctions, including an adverse inference instruction and an award of attorney's fees and expenses, based on the defendant's destruction of computer evidence).

The sanctions extend to negligent, reckless, and intentional evidence destruction. *Hudson v. AIH Receivable Management Services*, 2012 WL 1194329 at * 4 (D. Kan. Mar 14, 2012) (sanction warranted for negligent destruction of emails), *as modified*, 2012 WL 1215250 (D. Kan. Apr 9, 2012); *Kraft Reinsurance Ireland, Ltd. v. Pallets Acquisitions, LLC*, ___ F. Supp. 2d ___, 2011 WL 5386421 at * 11-12 (N.D. Ga. Sep. 30, 2011) (food

company and its cargo insurer spoliated evidence when, following mold contamination of international food shipment, they destroyed wooden shipping pallets that allegedly were the cause of the infestation, knowing that litigation with seller of pallets was reasonably foreseeable; prior to time of destruction of evidence, food company had written to seller indicating that seller would be fully liable for the losses and that its insurance carrier would be in touch with seller concerning the claim).

Bad faith is the common element here, and *Drury* reminds that it need not include a malice component, *Drury*, 427 F.3d at 946, though for the ultimate spoliation sanction -- dismissal, as seen in *Drury* -- the circumstances must be "extraordinary." *Id.*; *Denim North America Holdings, LLC v. Swift Textiles, LLC*, 816 F. Supp. 2d 1308, 1330 (M.D. Ga. 2011) (determining there was no evidence that plaintiff's employees destroyed email in bad faith); *see also Danny Lynn Elec. & Plumbing, LLC v. Veolia Es Solid Waste Southeast, Inc.*, 2012 WL 1571314 at * 1 (M.D. Ala. May 4, 2012) (collecting cases).

Here IP explains that just before Scruggs burned himself IP gave him a "truck unloading permit that required him to wear rubber boots." *Id.* at 2. He did not. In fact, Scruggs says "[h]e was wearing inexpensive

black boots that he purchased at Walmart." Doc. 63 at 5. After his feet were burned, he took the time to write a contemporaneous note about it, but then failed to retain the boots. But later, IP points out, Scruggs claimed that "somebody around [his] house" must have accidentally thrown them out. *Id.* at 3.

IP disbelieves him and moves for an adverse instruction spoliation sanction (instructing the jury that Scruggs destroyed the boots and that they may infer that the boots would have helped IP's defense), insisting that "this loss of the boots could not have happened accidentally." *Id.* at 3. Because the loss has prejudiced IP's ability to defend itself in this case (the boots could have yielded forensic evidence supporting, for example, a comparative-negligence defense), it seeks an instruction that, were the boots available, they would "provide valuable and relevant evidence adverse to Plaintiffs' case." *Id.* at 4. IP says that there are only three people in the Scruggs' household and two of them are the plaintiffs here. The third was their minor son and they had a duty to control him. *Id.* Scruggs, IP insists, "could have easily put his boots in a protected area or otherwise prevented their actual disposal." *Id.*

Too, Scruggs brought a workers compensation claim against his employer prior to this lawsuit and "to the extent that [he] filed that workers compensation claim prior to the losing of his boots, such loss would conclusively establish that spoliation had occurred." *Id.* at 9. Scruggs, IP thus concludes, "threw his boots away, or allowed his boots to be thrown away, while he was in contemplation of litigation." *Id.*

Deeming IP's motion meritless and urging that it be summarily denied, doc. 63 at 2, Scruggs denies that he was warned to wear special footwear. *Id.* In fact, he further asserts, an IP first aid clinic employee treated his burns and told him he could throw his boots away since they had chemicals on them. *Id.* at 2-3. And, he did not contact a lawyer "until many months later." *Id.* at 3. Unguided legally, he took the boots home but "[t]hey were disposed of when his brother and another family member decided to surprise [him] by cleaning out his truck. At this point [he] had yet to hire an attorney or make any other indication that he intended to file a lawsuit." *Id.*

Scruggs also insists that his boots are not crucial to any issue in this case, as IP's own records document his burns and the cause of same. *Id.* at 4. Indeed, he reminds, IP investigated the matter the *day* it happened,

but apparently failed to collect a sample of the liquid. *Id.* at 5. But even if the parties dispute precisely what kind of liquid burned Scruggs, all "have a pH level of 12, meaning they are both equally caustic substances." *Id.*

IP replies that Scruggs should not be believed, as his current explanation of what happened to his boots is suspiciously enhanced over his earlier, deposition explanation that "[s]omebody around the house accidentally" threw his boots away. Doc. 81 at 3. Even if this explanation is true, IP further contends, Scruggs was charged with knowledge that the boots would be of at least *some* relevancy and thus "such recklessness with regard to potentially vital evidence . . . justif[ies] sanctions for spoliation." *Id.* at 4. IP reminds that Scruggs appreciated the likelihood of litigation because he took the time to contemporaneously record his recollection of what happened that day. *Id.* at 5. The boots, IP insists, indeed were relevant to its defense because the experts in this case dispute the extent of Scruggs' injuries and resulting disability, and there is some chance the boots would have shown other, third-party chemicals on them. And their "cheapness" went to Scruggs' own duty of care to himself -- a point relevant to any comparative-negligence based

defense. *Id.* at 2-4. Finally, nothing compares to the impact of allowing jurors to see a piece of critical evidence (the boots) when finding liability and damages facts. *Id.*

While this is a reasonably close call, the Court agrees with IP. It is undisputed that the parties are disputing the extent of Scruggs' foot injuries, including his pain and suffering. If his boots showed extensive damage then that would tend to corroborate his exposure to and pain suffered from the burning liquid. And vice versa. Meanwhile, it is difficult to believe that a man who thought enough to memorialize that day's events in writing would also not think to preserve the only things that separated his feet from even more pain and suffering: his boots.[1] IP is therefore entitled to a jury instruction that Scruggs has failed to produce his boots for trial and that it is permissible for the jury to infer that those boots would have been favorable to IP's defense. Its spoliation motion, then, is granted. Doc. 54.

---

[1] *Cf. Stanfill v. Talton*, 2012 WL 1035385 at * 10-11 (M.D. Ga. Mar. 29, 2012) (father of pretrial detainee, who died while in custody at county jail, failed to establish that county defendants had duty to preserve any video of detainee in his cells, as would support spoliation sanctions against defendants in father's civil rights action; defendants did not anticipate litigation resulting from detainee's death, father did not file suit until almost two years after detainee's death, and there was no indication that father requested that defendants impose litigation hold or provided defendants any form of notice that litigation was imminent or even contemplated until lawsuit was actually filed).

within the responding party's control.").

The *Searock* case, however, also noted the requester's option to obtain "documents by taking the deposition of the custodians of the records of the companies concerned, Fed.R.Civ.P. 45(d)(1). . . ." *Searock*, 736 F.2d at 654. Still, expense and efficiency considerations are always in play. Scruggs shall promptly provide IP with the full names and addresses of all of his doctors. IP shall be free to prepare postage-paid, written-record requests for Scruggs to sign and for IP to then send to those sources. Each request shall ask the records source to send the records directly to IP. IP shall furnish a copy of those records to Scruggs upon his request. Alternatively, IP may directly subpoena those sources but then invoice Scruggs for the subpoena expenses if he fails to utilize the informal, prepared-letter option. IP may seek records back as far as 15 years. *See* doc. 67 at 3; doc. 83 at 8 (IP agrees to a 15-year limit). The Court is extending (limited to this matter) discovery 60 days to accommodate this ruling. To that extent, then, the Court grants IP's motion to compel. Doc. 72.

## B.  Medical Records

IP also moves to compel the production of Scruggs' medical records. Doc. 72.  Scruggs says that the requested documents are not in his possession.  Doc. 67 at 3.  IP cites *McDaniel v. Bradshaw*, 2011 WL 2470519 (S.D. Fla. 2011), to insist that Scruggs must affirmatively obtain and then disclose IP's requested documents.  *McDaniel's* reasoning:

> Although the Court accepts Plaintiff's representation that he does not now possess the vast majority of the documents the Court ordered him to produce, a party has an obligation to produce documents not only in his possession, but also documents in his custody and/or control. The Eleventh Circuit has defined "control" as the legal right to obtain documents upon demand. *Searock v. Stripling*, 736 F.2d 650 (11th Cir.1984). Plaintiff has the legal right to obtain at least some of the documents at issue from other sources, such as his income tax returns (from the IRS), medical records (from the medical providers), and credit card statements and canceled checks evidencing gun purchases (from the credit card providers and/or the bank). It does not appear, however, that Plaintiff made any effort to do so.

*Id.* at * 3; *see also* 1 DISCOVERY PROCEEDINGS IN FEDERAL COURT § 17:7 (3d ed. Mar. 2012) ("a party need not have actual possession of documents to be deemed in control of them if the party has the legal right to control or obtain them. . . . If the responding party can obtain documents in the possession of a third party upon request, the documents are considered

## C. Workers Compensation Records

IP also wants to reopen discovery in quest of Scruggs' worker's compensation history. Doc. 74. Plantiffs object. Doc. 64. IP says Scruggs failed to answer accurately its discovery request about the existence of any pre-incident workers compensation claims and treatment. Docs. 74 & 82. Yet, IP asked him if *he* ever filed such a claim and he said no. He was thus not deceptive, though it would have been more satisfying if he revealed that an ex-employer had filed one *for* him. Doc. 64 at 4-6. *That* claim is something IP found out about later from a third party. *Id.* at 5. IP now says that data is relevant, and thus worth reopening discovery to pursue, as it involved a sprained ankle. *Id.* at 5-6.

The Court agrees with Scruggs that he is claiming damages only for "damaged peripheral nerve fibers in his feet," doc. 64 at 2, and the prior claim, for a "twisted ankle," *id.* at 3, is a minor injury not reasonably shown to bear any material relevance to his claim here. IP cites no credible medical evidence showing that the ankle injury was permanent or in any way has spawned downwind effects that even arguably figure into Scruggs' present claimed difficulties. IP's motion thus is denied, and it is not necessary to reach plaintiffs' untimeliness argument, doc. 64 at 8-9.

The parties are also fighting over a specific doctor's (Dr. Reyes) records on Scruggs. He had seen Reyes, a pulmonologist, after the incident. Doc. 64 at 7. Scruggs had wanted to rule out any pulmonary damage, and did (he pursues only foot-damage here), but when IP asked him he could not remember Reyes's name. *Id.* Once Reyes's name was later revealed, IP says, it sought his records. Doc. 82 at 3-4. Scruggs has requested them and promises to share them, though he insists this is much ado about nothing. Doc. 64 at 8. The Court directs Scruggs to promptly share those records with IP, and otherwise denies IP's motion to extend discovery on these grounds. Doc. 74. However, IP may apply for a limited discovery extension to depose Reyes after it receives the requested documents -- *if* it can show relevancy (*i.e.*, that this pulmonologist's findings in any reasonable way impacts Scruggs' foot-based injury claims).

## D. Conclusion

Accordingly, the Court **GRANTS** IP's spoliation motion, doc. 54, as well as its motion to compel, doc. 72, but **GRANTS** only in part and **DENIES** in part its motion to reopen discovery. Doc. 74. IP's "amend" motion, doc. 57 (to amend a prior filing to cure an omission) is unopposed

by operation of Local Rule 7.5 and is therefore **GRANTED**.

**SO ORDERED** this 24th day of May, 2012.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA